UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

TRAVELL MAURICE LYNN WEAKLEY,

        Plaintiff,

v.

L. PAUL BAILEY et al.,

        Defendants.
_____/

Case No. 1:22-cv-982

Honorable Ray Kent

## **OPINION**

This is a civil rights action brought by a county prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.10.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim. The Court will also deny Plaintiff's motion seeking an order to subpoena camera footage (ECF No. 5).

## Discussion

### I.     Factual Allegations

When Plaintiff initiated this action, he was incarcerated at the Berrien County Jail in St. Joseph, Michigan.[2] The events about which he complains occurred at that facility. Plaintiff sues Sheriff L. Paul Bailey; Sergeant K. Robbins; Corrections Officers A. Tober, Unknown Wall, M. Elder, Unknown Turner, and Unknown Goodush; and Nurses Jen, Ashley, Kelly, and Unknown

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

[2] In his complaint, Plaintiff indicates that he expected to be released on December 6, 2022, and provided his address upon release. (ECF No. 1, PageID.9.) A search of the Berrien County Jail locator revealed that Plaintiff is no longer incarcerated there.

Shepleman. Plaintiff explicitly states that he is suing all Defendants, except Defendant Wall, in their official capacities. (ECF No. 1, PageID.2–4.) Plaintiff does not indicate in which capacity he is suing Defendant Wall. The Court, therefore, liberally construes Plaintiff's complaint to name Defendant Wall in both his official and individual capacities.

Plaintiff alleges that on September 26, 2022, he was sentenced to serve 93 days in jail. (ECF No. 1, PageID.5.) When he "was booked in at the courthouse," he gave his seizure and allergy medications to Defendant Turner. (*Id.*) Plaintiff claims that Defendant Turner failed to pass this information on to other officers, resulting in Plaintiff only receiving 2 of the 4 medications that he is prescribed. (*Id.*)

Plaintiff contends that upon his arrival at the jail, he was placed in segregation for two days and did not receive his medication during that time. (*Id.*) On September 28, 2022, Defendant Tober brought Plaintiff his lunch. (*Id.*) Plaintiff told her that he could not eat the meal because he was allergic to onions and because he could not have anything red due to his hemorrhoids. (*Id.*) Defendant Tober told Plaintiff to "pick the stuff out and eat it anyway." (*Id.*) Plaintiff told Defendant Tober that he should get a special diet and that it "should be in the computer from when [he] got booked in." (*Id.*)

Plaintiff did not get his seizure medication until lunch time on September 28, 2022. (*Id.*) That night, he was supposed to receive another seizure pill, but claims that Defendant Kelly passed right by him. (*Id.*) Plaintiff was told to lock down. (*Id.*) He asked Defendant Elder if the nurse could come back and give him his medication. (*Id.*) Defendant Elder said he would inform Defendant Kelly, but Defendant Kelly never came back. (*Id.*) Plaintiff alleges that he had a seizure that night and bit his tongue. (*Id.*) He pressed his emergency button several times, but no one responded. (*Id.*)

In the morning of September 29, 2022, Defendants Ashley and Jenn approached Plaintiff; he told them that he had suffered a seizure and "showed them the tissue of blood." (*Id.*) Plaintiff told them that no one came even though he had pressed the emergency button. (*Id.*) Plaintiff states that Defendant Robbins was with Defendants Ashley and Jen at this time. (*Id.*, PageID.6.) Defendant Jen told Defendant Robbins that Plaintiff's button was not working and said that Plaintiff would need to be moved to another cell because of his seizures. (*Id.*) Defendant Jen asked Plaintiff if his tongue was swollen. (*Id.*) Plaintiff responded that the swelling had gone down; Defendant Jen responded that there was nothing else they could do. (*Id.*) Plaintiff stated that he wanted to be moved to another cell because of the broken button; he was told that "they [were] workin[g] on it." (*Id.*)

Plaintiff suffered another seizure after lunch on September 30, 2022. (*Id.*) Right before he lost consciousness, he shouted to another inmate to press the button. (*Id.*) Plaintiff came to with Defendants Jen and Ashely standing over him. (*Id.*) Defendant Robbins was there as well, and stated that "it looked like a bunch of water on the floor." (*Id.*) Plaintiff alleges that he had urinated down his leg. (*Id.*) Defendant Robbins hit Plaintiff's emergency button and said, "Well, at least that problem is fixed." (*Id.*) Defendant Jen disagreed and said that Plaintiff could not be in that cell. (*Id.*) Defendant Jen asked Plaintiff if he was alright; Plaintiff "grabbed [his] head and felt a golf ball size[d] lump." (*Id.*) Defendants Ashley and Jen checked Plaintiff's eyes, vitals, and blood pressure before leaving. (*Id.*) Plaintiff claims that they never came back to check on him. (*Id.*)

Plaintiff pressed his emergency button and asked for an ice pack for his head. (*Id.*) He also asked for a shower and a change of clothes because he had urinated all over himself. (*Id.*, PageID.7.) "They" told Plaintiff to quit pressing the button. (*Id.*) Two hours later, "they" brought Plaintiff a new jail suit but did not let him shower. (*Id.*) Plaintiff asked to be out of that cell because

5

it was "depressing." (*Id.*) Plaintiff also stated that he did not think he was "[going to] live in this cell." (*Id.*) Because of that statement, Plaintiff's clothes were taken, and he was placed on suicide watch for 96 hours. (*Id.*)

After Plaintiff was released from suicide watch on October 4, 2022, he was moved upstairs to 2F, cell #1. (*Id.*) Plaintiff claims that he did not have bedding or a towel. (*Id.*) He asked Defendants Wall and Goodush, as well as another officer, for his belongings; he claims that they "played about it on the intercom." (*Id.*) Plaintiff contends that by this time, he had not showered for 4 days. (*Id.*) Plaintiff also asked for his underwear but did not receive it until October 5, 2022. (*Id.*)

On October 5, 2022, Plaintiff went to the nurses' station for a health assessment. (*Id.*) Defendant Ashley told Plaintiff that a sergeant thought that Plaintiff was faking his seizures "because it was water on the floor and how can a guy four cells down hear [Plaintiff] fall." (*Id.*) Plaintiff responded that the last thing he remembered doing was drinking water; Defendant Ashley responded that people who have seizure do not yell. (*Id.*) Plaintiff told her that he yelled for help because his button did not work. (*Id.*) Defendant Ashley looked at Plaintiff "with a shocked face and said she didn't [know] that and that she just started and didn't [know] that was the case." (*Id.*) Plaintiff asked Defendant Ashley if he could be moved from the top floor in case he had another seizure because he did not want to lose consciousness and fall down the stairs. (*Id.*) Defendant Ashley told Plaintiff that he should not be upstairs; Plaintiff claims that he was still upstairs at the time he filed his complaint. (*Id.*)

Further, Plaintiff alleges that on October 12, 2022, Defendant Shepleman told Plaintiff during medication pass time that if Plaintiff did not have blood work done, he could not be placed on trustee status. (*Id.*, PageID.8.) Plaintiff claims that this was different from what Defendant

6

Ashley had told him, because Defendant Ashley said that all Plaintiff needed was a tuberculosis test, which he had done. (*Id.*)

Plaintiff alleges that "these people are careless" and continued "to play with [his] life." (*Id.*) He claims that he never received his allergy medication or his inhaler. (*Id.*) He avers that Defendant Bailey "is over all these staff that are untrained to do the right work." (*Id.*)

Plaintiff goes on to allege that his legal mail "was moved all around" after a shakedown on October 16, 2022, and that it was the second shakedown of the week. (*Id.*) Plaintiff claims that Defendant Robbins and "one of the C/Os mentioned in this suit" conducted the shakedown. (*Id.*) Plaintiff claims that the inmates were taken out of their cells and that he was threatened with lock down. (*Id.*)

Based on the foregoing, the Court construes Plaintiff's complaint to assert various Eighth Amendment claims against Defendants. Plaintiff seeks $5.5 million in damages, as well as an apology letter from Defendant Robbins "for thinking [his] condition was not real." (*Id.*, PageID.10.)

**II.    Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

7

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Official Capacity Claims

As noted *supra*, Plaintiff names all Defendants, with the exception of Defendant Wall, in their official capacities only. Official capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)). An official capacity suit is to be treated as a suit against the entity itself. *Id.* at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); *see also Matthew v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "Individuals sued in their official capacities stand in the shoes of the entity they

represent," and the suit is not against the official personally. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *see also Graham*, 473 U.S. at 165–66.

Here, because Defendants represent Berrien County, Plaintiff's suit against them in their official capacities necessarily intends to impose liability on the county. Berrien County, however, may not be held vicariously liable for the actions of its employees under § 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell*, 436 U.S. at 694. Instead, a county is liable only when its official policy or custom causes the injury. *Connick*, 563 U.S. at 60. This policy or custom must be the moving force behind the alleged constitutional injury, and the plaintiff must identify the policy or custom, connect it to the governmental entity, and show that his injury was incurred because of the policy or custom. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire*, 330 F.3d at 815 (6th Cir. 2003). "Governmental entities cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged violation of constitutional rights." *Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) (citing *Monell*, 436 U.S. at 692).

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department. *See Monell*, 436 U.S. at 690. Moreover, the Sixth Circuit has explained that a custom "for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996). "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.* Here, Plaintiff's complaint is devoid of any allegations suggesting that his alleged constitutional injury was the result of an official policy or custom employed by Berrien County. The Court, therefore, will dismiss Plaintiff's official capacity claims against Defendants. Accordingly, that leaves only Plaintiff's individual capacity claim against Defendant Wall.

### B.  Individual Capacity Eighth Amendment Claim Against Defendant Wall

Plaintiff's sole allegation concerning Defendant Wall is that on October 4, 2022, he asked Defendant Wall and other officers for his belongings after being moved to a new cell from suicide watch and "they played about it on the intercom." (ECF No. 1, PageID.7.) Plaintiff suggests that he had not showered in 4 days by this time. (*Id.*) He also asked for his underwear, but did not receive that until the next day. (*Id.*) The Court has construed Plaintiff's allegations to assert an Eighth Amendment conditions of confinement claim.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

10

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Plaintiff's allegations concerning Defendant Wall simply do not rise to the level of Eighth Amendment violations. Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (discussing temporary inconveniences generally); *see also Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003) (finding that allegations of overcrowded cells and denials of daily showers

11

and out-of-cell exercise do not rise to constitutional magnitude, where a prisoner is subjected to the purportedly wrongful conditions for six days one year and ten days the next year).

The Sixth Circuit and other courts have concluded that exposure to objectionable living conditions for periods of time longer than the period at issue in Plaintiff's complaint did not rise to the level of an Eighth Amendment violation. *See Grissom v. Davis*, 55 Fed. App'x 756, 757–58 (6th Cir. 2003) (holding that 7-day period where inmate was not given mattress, blanket, or sheets did not deprive her of basic human needs or cause her to suffer serious harm); *Wells v. Jefferson Cty. Sheriff Dep't*, 35 Fed. App'x 142, 143 (6th Cir. 2002) (finding that sleeping on a mattress on the floor in a cold cell for six days was not a constitutional violation); *Metcalf v. Veita*, No. 97-1691, 1998 WL 476254 at *2 (6th Cir. Aug. 3, 1998) (finding that an eight-day denial of showers, trash removal, cleaning, and laundry did not result in serious pain or offend contemporary standards of decency under the Eighth Amendment); *Martinez v. Gore*, 2021 WL 2269987 at *3 (W.D. Ky. June 3, 2021) ("The Court finds that Plaintiff's claim that he spent four days with nothing but paper boxers to wear in a cold cell with no mat, sheets, blankets, shoes, socks, or other property, standing alone, does not state an Eighth Amendment claim.").

Here, Plaintiff does not allege that he was denied the ability to maintain hygiene on the days he was not allowed to shower. Moreover, nothing in the complaint suggests that Defendant Wall was personally responsible for limiting his showers. Furthermore, Plaintiff's complaint is devoid of facts from which the Court could infer that the temporary denial of his belongings, including bedding and clothes, constituted a serious risk to Plaintiff's health or safety. Overall, Plaintiff's allegations against Defendant Wall premised upon these conditions do not rise to the level of a deprivation that implicates the Eighth Amendment. Plaintiff's individual capacity claims against Defendant Wall will, therefore, be dismissed.

### C. State Law Claims

In addition to Plaintiff's federal claims, Plaintiff states that he is suing Defendants for "mal[]practice" and "negligence[]." (ECF No. 1, PageID.10.) Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertions that Defendants violated state law fail to state a claim under § 1983.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Because the Court will dismiss all of Plaintiff's federal claims against Defendants, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claim against Defendants. Plaintiff's state law claim against Defendants therefore will be dismissed without prejudice.

### III. Pending Motion

Plaintiff has filed a motion to subpoena camera footage. (ECF No. 5.) Specifically, Plaintiff wants to subpoena camera footage from September 26, 2022, as well as from September 27–30, 2022. (*Id.*) Plaintiff also seeks "documents of the seizure [he] had and [his] charts of blood pressure checks and vitals." (*Id.*) Given the dismissal of Plaintiff's complaint, the Court will deny this motion.

13

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will dismiss Plaintiff's state law claims without prejudice. The Court will also deny Plaintiff's motion for an order to subpoena camera footage. (ECF No. 5.)

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.[3]

Dated:   January 27, 2023                              /s/ Ray Kent
                                                       Ray Kent
                                                       United States Magistrate Judge

---

[3] Because Plaintiff appears to no longer be incarcerated at the Berrien County Jail, the Court will direct that the opinion, order, and judgment be sent to Plaintiff at both the address of record on the docket and the address set forth in ECF No. 1, PageID.9.